# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CONTECH CONSTRUCTION PRODUCTS, INC., et al.,

    Petitioners,

    v.

WERNER HEIERLI,

    Respondent.

Civil Actions Nos: 09-01483 (RBW)
09-02204 (RBW)

## MEMORANDUM OPINION

These two cases arise from identical underlying facts. In Civil Action 09-cv-1483 (RBW), the petitioners, Contech Construction Products, Inc. and Patrick Harlow (collectively "Contech"), petition the Court "to vacate a portion of [a] [p]artial [Arbitration] Award" ("Partial Award") rendered in favor of the respondent, Werner Heierli ("Heierli"), on May 7, 2009. Petition to Vacate a Portion of the Arbitration Award ("Contech's Pet. to Vacate") at 1-5. In response, Heierli opposes Contech's petition and has filed a cross-petition seeking confirmation of the Partial Award. Subsequently, on November 12, 2009, a final arbitration award was rendered in favor of Heierli, along with interest, attorneys' fees, and costs ("Final Award"). Then, on November 20, 2009, Heierli instituted the second case, Civil Action 09-cv-2204, petitioning the Court to confirm the Final Award. Petition and Motion of Werner Heierli to Confirm Arbitration Award ("Heierli's Pet. to Confirm") at 1. Contech opposes the petition to confirm the Final Award and has cross-petitioned to vacate the Final Award. Memorandum In Opposition to the Petition of Werner Heierli to Confirm Arbitration Award and Cross-Petition of Contech Construction Products Inc. to Vacate the Arbitration Award ("Contech's Cross-Pet. to

Vacate") at 1. Accordingly, both cases involve the same parties and their resolution turns on the question of whether the two awards entered by the arbitrator are enforceable.

For the reasons that follow, the Court must grant both Heierli's Cross-Petition to enforce the Partial Award and his Petition to Confirm the Final Award. Thus, the Court must deny both Contech's Petition to Vacate the Partial Award and its Cross-Petition to Vacate the Final Award.

## I. Background[1]

A.    Civil Action 09-cv-1483

Contech Construction Products, Inc. is the sole majority shareholder of BEBOTech Corporation ("BEBOTech") and Patrick Harlow is the President of BEBOTech's Board of Directors. Contech's Pet. to Vacate ¶ 8. Werner Heierli is the sole minority shareholder of BEBOTech. Id.

Contech and Heierli entered into a Stockholders' Agreement and several other related agreements on May 2, 2003. Id. ¶ 9. The agreements contain identical dispute resolution provisions requiring the parties to "attempt in good faith to resolve any dispute arising out of or relating to this Agreement promptly by negotiation . . . failing which the parties shall endeavor to resolve any dispute . . . by mediation under the CPR Mediation procedure." Id., Ex. A at 12. If negotiations and mediation are unsuccessful, the dispute resolution clauses require the parties to arbitrate "[a]ny controversy or claim arising out of or relating to [the agreements in the International Institute for Conflict Prevention and Resolution ("CPR")] . . . in accordance with the CPR Rules for Non-Administered Arbitration." Id. The agreements also provide that any arbitration proceedings will be held in Washington, D.C. Id.

---

[1] The following facts are undisputed, except where noted otherwise.

On March 23, 2007, after unsuccessful attempts to negotiate and mediate a dispute between the parties, Heierli filed an arbitration demand against Contech "asserting individual and derivative claims for breach of contract and breach of fiduciary duty". Id. ¶ 13. On May 7, 2009, Arbitrator Nancy Lesser (the "Arbitrator") issued a Partial Award finding that: (1) Contech had breached its contractual duties to Heierli; (2) Contech had breached its fiduciary duties to Heierli; (3) Heierli was entitled to at least the minimum amount of the value of his interest (his shares) in BEBOTech pursuant to the formula adopted in the Stockholders' Agreement, upon exercise of his "Put Option" in that agreement; (4) Contech could not include certain charges and fees in determining Heierli's share value under the Stockholders' Agreement formula; and (5) Heierli was permitted to petition for an interim award of "reasonable attorney's fees and costs in proceedings to be scheduled following the issuance of [the] Partial Award." Id., Ex. E (Partial Award) at 34-35. However, the Arbitrator also found that Heierli had failed to prove that he suffered any compensatory damages or that he was entitled to punitive damages as a result of the breach. Id., Ex. E (Partial Award) at 33.

Contech filed a Motion for Reconsideration of the Partial Award with the Arbitrator on May 22, 2009, requesting that she reconsider and withdraw her award of attorneys' fees and costs, arguing that the Arbitrator did not have the authority to make such awards under either the CPR rules or Delaware law.[2] Contech's Pet. to Vacate ¶ 18; Heierli's Memorandum in Opposition to Petition to Vacate a Portion of the Arbitration Award ("Heierli's Opp'n"), Ex. 2 (Respondent Contech Construction Products Inc.'s Motion for Reconsideration of (1) Interim Award of Attorneys' Fees and Costs and (2) Termination of the Management Services

---

[2] The Court notes that neither party disputes that Delaware law governs the administration and interpretation of the agreements between the parties, as each agreement contained a choice of law provision invoking Delaware law. Contech's Pet. to Vacate, Ex. A (Stockholders' Agreement) ¶ 7.6, Ex. B (Management Services Agreement) ¶ 10(a), Ex. C (Sales Representative Agreement) ¶ 14(a).

Agreement) at 3. On July 15, 2009, the Arbitrator denied Contech's Motion for Reconsideration,

finding that "[i]t is uncontroverted that Delaware law permits such an award where

circumstances warrant [making the award]." Heierli's Opp'n, Ex. 5 (July 15 Order).

Furthermore, the Arbitrator concluded that "[i]n light of [her findings], it [was] unnecessary for

[her] to reach the second prong of [Contech's] [m]otion regarding the [applicability of] the CPR

[r]ules, although [she] remain[ed] of the view that the [CPR r]ules permit such an award

independent of its availability under Delaware law." Id. Contech responded to the denial of its

Motion for Reconsideration by filing the first of the two cases, Civil Action 09-cv-1483, now

before this Court. After that filing, on September 11, 2009, the Arbitrator set the amount of

attorneys' fees and costs to be awarded to Heierli under the Partial Award at $556,749.99.

Petitioners' Memorandum in Opposition to Respondent's Cross-Petition to Confirm Arbitrator's

Award of Heierli's Attorneys' Fees and Expenses, Ex. B (Fee Award) at 1.

B.     Civil Action 09-cv-2204

In addition to the dispute resolution clause, the parties' Stockholders' Agreement

contained "put" and "call" options which accorded Heierli the option of selling his BEBOTech

shares to Contech at a price calculated pursuant to a formula specified in the Stockholders'

Agreement, and Contech had the option to purchase Heierli's shares at a price determined by a

different formula specified in the Agreement. Contech's Cross-Pet. to Vacate, Ex. A

(Stockholders' Agreement) § 4.[3] On May 18, 2009, shortly after the Arbitrator issued her Partial

---

[3] The Stockholders' Agreement describes the "put" option in Section 4.1(a):

> At any time hereafter, Heierli, in his discretion, shall have the option, but no
> obligation, to sell all . . . of his Shares in the Company to Contech (the "Heierli
> Put Option"), and Contech shall be obligated to purchase such Shares.

The Stockholders' Agreement also describes the "call" option in Section 4.2(a):

(continued . . .)

Award finding that Contech had breached its fiduciary duties to Heierli, Heierli exercised his put option. Statement of Points and Authorities In Support of Heierli's Petition and Motion to Confirm Arbitration Award (Heierli's Mem. to Confirm") at 3. The parties, however, disagreed on the "calculated purchase price" offered by Contech, id., and Heierli then filed a request with the Arbitrator for an emergency hearing on the "put price," Contech's Cross-Pet. to Vacate at 5. "Consequently, the Arbitrator set additional hearing dates [of] October 7 and 8, 2009, for the purpose of determining whether Contech had violated the Partial Award and the Stockholders Agreement; the parties appeared before the Arbitrator on those dates and presented witness testimony, documentary evidence and argument." Heierli's Mem. to Confirm at 3. Contech had objected to the Arbitrator conducting any additional hearings, however, claiming that the issue of the appropriate price for the exercise of the put option was outside the scope of the issues originally submitted to arbitration. Contech's Cross-Pet. To Vacate at 5-6. The Arbitrator rejected Contech's challenge, id. at 6, and in her Final Award issued on November 12, 2009, the Arbitrator disallowed certain expenses included in the calculation of the put price claimed by Contech, arriving at a purchase price of $10,354,011.15, Heierli's Mem. to Confirm at 3. She also set the process by which payment would be made by Contech to Heierli. Contech's Cross-Pet. To Vacate, Ex. J (Final Award) at 14-16. However, Contech failed to comply with the terms of the Arbitrator's Final Award, Heierli's Mem. to Confirm at 4, and on November 20, 2009, Heierli commenced the second of the two cases before this court, Civil Action 09-cv-2204, seeking enforcement of the Final Award.

---

(. . . continued)

> Subject to the terms of Section 4.9(c), at any time after June 30, 2006, Contech shall have an annual right, exercisable only in the month of July, to purchase, and Heierli shall be obligated to sell, all, but not less than all, of Heieli's Shares (the "Contech Call").

Contech's Cross-Pet. to Vacate, Ex. A at 5, 7.

## II. **Analysis**

A.    The Partial Award

Contech argues that under the 2005 version of the CPR Rules the Arbitrator's power to award attorneys' fees and costs under CPR Rules 16.2 and 16.3 is limited by CPR Rule 10.3, which states:[4] "[t]he Tribunal may grant any remedy or relief, including but not limited to specific performance of a contract, which is within the scope of the agreement of the parties and permissible under the law(s) or rules of law applicable to the dispute."  Contech's Pet. to Vacate ¶¶ 22-23.  Thus, according to Contech, the Arbitrator only had the authority to award attorneys' fees and costs under CPR Rule 16.3 that were independently permissible under Delaware law. Id. ¶¶ 24-25.  Contech consequently maintains that the award of attorneys' fees and costs to Heierli in this case was impermissible under Delaware law because Heierli was not a prevailing party due to his failure to prove recoverable damages. Id. ¶ 33-34. This, according to Contech,

---

[4]   Because the arbitration proceeding was filed prior to the 2007 amendment to the CPR Rules, the 2005 version of the CPR Rules governed the arbitration.  Contech's Pet. To Vacate, Ex. D (2005 Arbitration Rules) & Ex. F (Clerical Amendment to Partial Award).  The 2005 version of Rule 16.2 states:

> The Tribunal shall fix the costs of arbitration in its award. The costs of arbitration include:
> a. The fees and expenses of members of the Tribunal;
> b. The costs of expert advice and other assistance engaged by the Tribunal;
> c. The travel and other expenses of witnesses to such extent as the Tribunal may deem appropriate;
> d. The costs for legal representation and assistance and experts incurred by a party to such extent as the Tribunal may deem appropriate;
> e. The charges and expenses of CPR with respect to the arbitration;
> f. The costs of a transcript; and
> g. The costs of meeting and hearing facilities.

Heierli's Opp'n, Ex. 12 (CPR Rules).  The 2005 version of Rule 16.3 states:

> Subject to any agreement between the parties to the contrary, the Tribunal may apportion the costs of arbitration between or among the parties in such manner as it deems reasonable, taking into account the circumstances of the case, the conduct of the parties during the proceeding, and the result of the arbitration.

Id.

precluded the Arbitrator from having "jurisdiction, authority, or power" to make the awards because the American Rule only allows prevailing parties to recover attorneys' fees and costs and Heierli was not a prevailing party. Id. ¶ 26; see Alaska Elec. Pension, Fund v. Brown, 988 A.2d 412, 417 (Del. 2010) ("Delaware generally follows the American Rule, under which litigants are responsible for their own attorneys' fees, regardless of the outcome of the lawsuit"). Contech further asserts that Delaware's "common corporate benefit" exception to this general rule does not support the award of attorneys' fees and costs for Heierli's breach of fiduciary duty claim because there was no benefit conferred to BEBOTech or its shareholders as a result of Heierli's action.[5] Contech's Pet. to Vacate ¶¶ 27-29. Moreover, Contech argues that its conduct does not fall within the bad faith exception to the American Rule, which allows a non-prevailing party to recover attorneys' fees and costs where there is a sufficiently egregious breach of a fiduciary duty. Id. ¶ 35-37. And, Contech notes that the Arbitrator did not find that Contech had acted in bad faith as the basis for awarding attorneys' fees and costs to Heierli. Id. ¶ 36. Specifically, Contech points to the Arbitrator's finding that its conduct was not sufficiently "reprehensible" to give rise to punitive damages. Id.

Contech also contends that under the District of Columbia Uniform Arbitration Act (the "D.C. UAA"), which it maintains governs the arbitration of the parties' dispute, an arbitrator can only award attorneys' fees and costs if the parties expressly agree that the arbitrator has the

---

[5] "Delaware courts have long-recognized the 'common corporate benefit' doctrine as an exception to the American Rule to provide for reimbursement of attorney's fees and expenses in corporate litigation." Alaska Elec. Pension, 988 A.2d at 417. In order to avail himself of common corporate benefit doctrine, the applicant must show:

> (i) the suit was meritorious when filed; (ii) the action producing benefit to the corporation was taken by the defendants before a judicial resolution was achieved; and (iii) the resulting corporate benefit was causally related to the lawsuit.

Id.

authority to do so.  <u>Id.</u> ¶¶ 30-31.  And Contech argues that since its agreements with Heierli did not contain an express provision allowing the Arbitrator to award attorneys' fees and costs, she lacked "jurisdiction, authority, or powers" to make such an award.  <u>Id.</u> ¶ 32.

Furthermore, Contech claims that the Arbitrator should have dismissed Heierli's breach of fiduciary duty claim as it was preempted by his identical breach of contract claim and Delaware law prohibits parties from pursuing a breach of fiduciary duty tort claim for conduct that allegedly breached an agreement between the parties "because contract claims preempt tort claims."  <u>Id.</u> ¶¶ 38-40.  Therefore, according to Contech, "[t]he Arbitrator exceeded her jurisdiction by awarding attorneys' fees and costs" because Heierli's breach of fiduciary duty claims "were barred as a matter of Delaware law."  <u>Id.</u> ¶ 41.

Heierli argues that Contech's petition to vacate the arbitration award is procedurally defective and should be dismissed.  Heierli's Opp'n at 5.  Heierli maintains that Contech, instead of filing a "Petition," <u>id.</u>, should have sought to vacate the arbitration award by filing a motion to vacate the award, <u>id.</u> at 6-7.  Heierli further argues that Contech is barred by the doctrine of judicial estoppel from challenging the Arbitrator's attorneys' fees and costs awards because its argument that the Arbitrator lacked authority to make the awards is inconsistent with the arguments it advanced during the arbitration hearing.  <u>Id.</u> at 9-10.  Heierli also contends that Contech waived its challenge to the Arbitrator's jurisdiction to award attorneys' fees and costs when it failed to raise the challenge during the arbitration proceedings.  <u>Id.</u> at 10-12.  Heierli further argues that the Court must defer to the Arbitrator's determination regarding her jurisdiction because the parties in this case intended for the Arbitrator to determine the scope of her jurisdiction.  <u>Id.</u> at 12-14.  Heierli posits that the Federal Arbitration Act ("FAA"), not the D.C. UAA, governs the parties' dispute and that Contech is judicially estopped from arguing

otherwise.[6]  Id. at 28-30.  But even assuming that the D.C. UAA applies, Heierli argues that the

Arbitrator did not exceed her powers in awarding him attorneys' fees and costs under the D.C.

UAA.[7] Id. at 30-32.  Heierli also contends that the plaintiffs' arguments based on Delaware law

must fail because the Arbitrator did not exceed her powers in applying Delaware law to the

parties' dispute.  Id. at 14-16.  Heierli further argues that the Arbitrator did not act in manifest

disregard of the law in awarding attorneys' fees and costs, and thus, Contech cannot satisfy the

prerequisites necessary to successfully challenge the awards under the "manifest disregard of the

law" standard.[8]  Id. at 16-28. Therefore, he contends that the Court is not permitted to set aside

the awards.  Id.

Heierli also requests that the Court award him costs and attorneys' fees for responding to

Contech's  petition.  Id. at 32-34.  Heierli maintains that Contech's challenge is a "presumptively

unjustified" challenge to the merits of the awards.  Id. at 32.  Heierli opines that the Court should

use its equitable powers to award him attorneys' fees and costs against Contech because it

unjustifiably refused to abide by the arbitration award.  Id.[9]

    1.       The Procedural Challenge to the Petitioner's Petition

---

[6]  Contech did not respond to Heierli's argument regarding the applicability of the FAA in its Reply Memorandum.

[7]  Like the FAA, the D.C. UAA allows a court to vacate an arbitral award when an arbitrator exceeds her powers.
See D.C. Code § 16-4423(a)(4) (2009) ("[T]he court shall vacate an award made in the arbitration proceeding if . . .
[a]n arbitrator exceeded the arbitrator's powers.").

[8]  Contech expressly denies that it challenges the Partial Award under the "manifest disregard of the law" standard.
See Petitioners' Reply Memorandum In Support of the Petition to Vacate A Portion of the Arbitration Award
("Contech's Pet. to Vacate Reply") at 7-8 ("Respondent's attempt to mischaracterize Petitioners' challenge as one
under the 'manifest disregard' standard must fail.").  However, the Court will nevertheless address this issue after
Heierli raised the argument in his Memorandum in Opposition to the Petition to Vacate.

[9]  At this time the Court declines to address the issue of whether the plaintiff is entitled to attorneys' fees and costs
in regards to Contech's Petition to Vacate a Portion of the Arbitration Award and Heierli's Petition to Confirm
Arbitration Award, as the issue has not been sufficiently briefed by the parties. Therefore, Heierli may file a separate
motion with the Court requesting such attorneys' fees and costs. An order to this effect will be issued
contemporaneously with the issuance of this memorandum opinion.

Under the FAA,[10] an application to vacate an arbitration award "shall be made and heard in the manner provided by law for the making and hearing of motions." 9 U.S.C. § 6 (2006).[11] The statute provides no other process for vacating an arbitration award and therefore the motions process is the exclusive means of pursuing such relief. Id. Thus, the FAA does not allow a party to initiate a challenge to an arbitration award by filing a complaint or a petition to vacate the award. O.R. Sec., Inc. v. Prof'l Planning Assocs., 857 F.2d 742, 745-46 (11th Cir. 1988) (citation omitted). A motion must be written—unless made during a hearing or trial—and state both the grounds for seeking an order with particularity as well as the relief sought. Fed. R. Civ. P. 7(b). In addition, this Court's Local Rule addressing the filing of motions requires that a motion be accompanied by a memorandum of points of law and authorities that support the motion. LCvR 7(a). Federal courts, however, have discretion to treat a petition to vacate as a motion if the parties have fully developed the issue or issues for the court. See O.R. Sec., Inc., 857 F.2d at 746 ("[A]n erroneous nomenclature does not prevent the court from recognizing the true nature of a motion.") (quoting Sacks v. Reynolds Secs., Inc., 593 F.2d 1234, 1239 (D.C.Cir.1978). The Court also has discretion to allow a party to submit a "motion" that does not include a memorandum of law and authorities if the other party is not prejudiced. See Mazloum v. D.C. Metro. Police Dep't, 576 F. Supp. 2d 25, 41 n.11 (D.D.C. 2008).

Here, Contech has improperly challenged the arbitration award by filing a petition to vacate the award rather than a motion accompanied by a memorandum of points and authorities. See O.R. Sec., Inc., 857 F.2d at 745. The Court, however, will exercise its discretion and decline

---

[10] The Court notes that because the parties' contracts impact interstate commerce, the FAA controls absent a clear indication by the parties to the contrary. Jung v. Ass'n of Am. Med. Colls., 300 F. Supp. 2d 119, 144, 152 (D.D.C. 2004) (citations omitted). The Court will address this subject hereafter, infra pp. 12-14.

[11] The D.C. UAA also requires that a petition to vacate an arbitration award be filed as a motion in accordance with the rules of the court in which the motion is brought. D.C. Code § 16-4405(a).

to dismiss Contech's petition for these transgressions because the parties have fully developed their arguments in their submissions to the Court. And in regard to Contech's failure to submit a memorandum of points of law and authorities as required by Local Civil Rule 7, the Court finds that the respondent has not been prejudiced by this failing because the petition contains the grounds on which Contech challenges the arbitration award and offers legal arguments in support of its petition. The Court also notes that Heierli's petition to enforce the Final Award suffers from the same procedural defect he complains about. However, as with Contech's petition, the Court, in its discretion, likewise construes his petition as a motion.

      2.     The Respondent's Judicial Estoppel Challenge

The doctrine of judicial estoppel bars "a party from asserting a position [in court] proceeding[s] that is [clearly inconsistent with] a position previously taken in the same or earlier proceedings." Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara, 364 F.3d 274, 293-94 (5th Cir. 2004) (finding that the district court did not abuse its discretion in applying the doctrine in proceedings challenging an arbitration award); accord Donovan v. U.S. Postal Serv., 530 F. Supp. 894, 902 (D.D.C. 1981). The doctrine "preclude[s] litigants from 'playing fast and loose' with the courts, and prohibit[s] parties from deliberately changing positions according to the exigencies of the moment." Karaha Bodas Co., 364 F.3d at 294 (quoting United States v. McCaskey, 9 F.3d 368, 378 (5th Cir. 1993)). In determining whether to apply the doctrine of judicial estoppel, "several factors typically inform the decision . . . to apply the doctrine in a particular case:" (1) whether the party's later position is "clearly inconsistent" with an earlier position; (2) whether the party was able to convince a court to accept the earlier position; and (3) whether the party seeking to advance an inconsistent position

"would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." New Hampshire v. Maine, 532 U.S. 742, 750-51 (2001) (citations omitted).

Here, Contech is not attempting to advance arguments inconsistent with arguments it made during the arbitration proceedings. In fact, Contech has consistently maintained that although the Arbitrator had the power to award attorneys' fees and costs, she only had authority to make such awards if done so in compliance with Delaware law. Heierli's Opp'n, Ex. 2 at 5-13 (Contech's Motion for Reconsideration of (1) Interim Award of Attorneys' Fees and Costs and (2) Termination of the Management Services Agreement). Furthermore, Contech has consistently maintained that the CPR Rules do not provide an independent basis for the Arbitrator's award of attorneys' fees and costs. Id. at 4. Therefore, the Court finds that the doctrine of judicial estoppel does not bar Contech from pursuing the arguments it advances before this Court.

3. The FAA's Applicability to Judicial Review of the Parties' Dispute

The FAA governs contracts to arbitrate disputes involving interstate commerce. 9 U.S.C. §§ 1-2. "[T]he intent of the contracting parties to apply state arbitration rules or law to arbitration proceedings [and opt out of the applicability of the FAA] must be explicitly stated in the contract and . . . a general choice of law provision does not evidence such intent." Jung v. Ass'n of Am. Med. Colls., 300 F. Supp. 2d 119, 152 (D.D.C. 2004) (citing Sovak v. Chugai Pharm. Co., 280 F.3d 1266, 1270 (9th Cir. 2002) ("[A] general choice-of-law clause within an arbitration provision does not trump the presumption that the FAA supplies the rules for arbitration."); Roadway Package Sys., Inc. v. Kayser, 257 F.3d 287, 288-89 (3d Cir.2001) ("[A] generic choice-of-law clause, standing alone, is insufficient to support a finding that contracting parties intended to opt out of the FAA's default standards."). The FAA "declare[s] a national

policy favoring arbitration" and supersedes conflicting state laws. <u>Preston v. Ferrer</u>, 552 U.S. 346, 353 (2008). Here, the parties contracted to sell construction materials nationwide. Heierli's Opp'n, Ex. 1 (Partial Award) at 5. Thus, their contract implicates interstate commerce and their agreement to arbitrate their disputes is controlled by the FAA by "default" absent a clear indication to the contrary. <u>See</u> <u>Jung</u>, 300 F. Supp. 2d at 152 (quoting <u>Roadway Package Sys.</u>, 257 F.3d at 288-89).

Contech has not adequately explained why the D.C. UAA rather than the FAA governs judicial review of the parties' arbitration of their dispute. The Court assumes that Contech is asserting that the provision of the dispute resolution clause which states: "[a]ny mediation or arbitration proceedings shall occur in Washington, D.C.," Contech's Pet. to Vacate, Ex. A (Stockholders' Agreement) ¶ 7.11, Ex. B (Management Services Agreement) ¶ 10(b), Ex. C (Sales Representative Agreement) ¶ 14(b), expresses an agreement between the parties to opt out of the FAA. In analogous situations, however, courts have found that even a choice of law provision indicating that a particular jurisdiction's substantive law will govern the agreement does not amount to an express statement to opt out of the FAA. <u>See, e.g.</u>, <u>Mastrobuono v. Shearson Lehman Hutton, Inc.</u>, 514 U.S. 52, 59 (1995) (finding that the FAA preempted the New York rule prohibiting punitive damage awards by arbitrators because the parties demonstrated no contractual intent to opt out of the FAA even with the adoption of a choice of law clause); <u>Jung</u>, 300 F. Supp. 2d at 152-53 (indicating that "[n]umerous courts of appeals have concluded that <u>Mastrobuono</u> requires that the intent of the contracting parties to apply state arbitration rules or law to arbitration proceedings must be explicitly stated in the contract and . . . a general choice of law provision does not evidence such intent," in concluding that federal arbitration law governed despite a "general choice of law provision"). While Contech's argument is factually somewhat

stronger than analogous cases because the reference to Washington, D.C. appears in the arbitration clause itself and not a separate choice of law clause,[12] Mastrobuono makes clear that an opt out clause must be explicit to be effective. Jung, 300 F. Supp. 2d at 152-53. As a result, there is no clear intent expressed by the parties for the FAA not to govern the arbitration of disputes between them; rather, the reference to Washington, D.C. is merely an agreement between parties from different countries as to the location where the arbitration proceedings would occur. Therefore, the Court must conclude that the FAA governs this matter, and accordingly, provides the grounds on which the Partial Award may be vacated and the scope of the Arbitrator's authority.

4. The Applicability of Delaware Substantive Law to the Arbitral Resolution of the Parties' Dispute

Neither party disputes that Delaware law governs the administration and interpretation of the agreements between the parties because both the Stockholders' Agreement and the Management Services Agreement contain a choice of law provision invoking Delaware substantive law.[13] Contech's Pet. to Vacate, Ex. A (Stockholders' Agreement) ¶ 7.6, Ex. B (Management Services Agreement) ¶ 10(a), Ex. C (Sales Representative Agreement) ¶ 14(a). In its Petition to Vacate the Partial Award, Contech stated, "[i]n this case, the law of Delaware is the applicable rule of law because it was expressly selected by the parties in the [Stockholders', Management Services, and Sales Representative] Agreements." Contech's Pet. to Vacate at 5. And Heierli agreed in his Memorandum in Opposition to the Petition to Vacate that Delaware law governed the parties' dispute. See Heierli's Opp'n at 13 & n.10. Moreover, in the second

---

[12] Section 7.11 of the Stockholders' Agreement reads: "Any mediation or arbitration proceedings shall occur in Washington, D.C., USA, unless otherwise agreed." Contech's Pet. to Vacate, Ex. A at 12.

[13] Delaware substantive law was applied by the Arbitrator in the two decisions at issue in these cases. See generally Heierli's Opp'n, Ex. 1 (Partial Award); Contech's Cross-Pet. to Vacate, Ex. J (Final Award).

action, Heierli requested pre-judgment interest based on the argument that it is mandatory under Delaware law, Heierli's Mem. to Confirm at 7, and Contech did not contest the applicability of Delaware law on this issue. The Court therefore concludes that Delaware substantive law governs the arbitral resolution of the parties' dispute.

5.    Whether the Partial Arbitration Award Should be Vacated

Under the FAA, "judicial review of arbitral awards is extremely limited." Kanuth v. Prescott, Ball & Turben, Inc., 949 F.2d 1175, 1178 (D.C. Cir. 1991). "Courts thus do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts." United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987). Accordingly, the grounds for vacating an arbitration award are limited to "extreme arbitral conduct" as defined in Sections 10 and 11 of the FAA. Hall St. Assocs. v. Mattel, Inc., 552 U.S. 576, 586 (2008). The Court will first discuss the Arbitrator's jurisdiction to award attorneys' fees and costs, and then discuss whether she "exceeded her powers" in making these awards.

a.    Whether the Parties Intended for the Arbitrator to Determine the Scope of Their Agreement to Arbitrate

When a dispute involving parties to an agreement with an arbitration clause is brought to a court for resolution, it is the court's obligation to determine whether the parties agreed to submit a particular issue to arbitration unless the parties have made unmistakably clear that they intended for the arbitrator, rather than the court, to determine the arbitrator's jurisdiction. First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995). In determining whether there is clear unmistakable evidence that the parties agreed to have an arbitrator determine the scope of their agreement, "courts generally . . . should apply ordinary state-law principles that govern the

formation of contracts." Id.; see also, e.g., Grynberg v. BP P.L.C., 585 F. Supp. 2d 50, 54 (D.D.C. 2008).

The parties here clearly intended to have the Arbitrator determine the scope of her own jurisdiction. Under Delaware law, the incorporation of arbitral rules in the agreement giving the arbitrator the ability to determine the scope of the arbitrator's own jurisdiction, combined with an arbitral clause providing for arbitration of all disputes, demonstrate clear unmistakable proof that the parties intended the arbitrator to determine the scope of their agreement. See James & Jackson, LLC v. Willie Gary, LLC, 906 A.2d 76, 80 (Del. 2006). And here, the parties' agreements provide that "[a]ny controversy or claim arising out of or relating to this Agreement or the breach, termination or validity thereof, . . . shall be finally settled by arbitration . . . in accordance with the CPR Rules for Non-Administered Arbitration." Heierli's Opp'n, Ex. 9 (Stockholders' Agreement) ¶ 7.11; Ex. 10 (Management Services Agreement) ¶ 10(b); Ex. 11 (Sales Representative Agreement) ¶ 14(b). The CPR rules state that "[t]he [arbitration] Tribunal shall have the power to hear and determine challenges to its jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." CPR Rule 8.1; Heierli's Opp'n, Ex. 12. Because the parties clearly indicated their intent to have the Arbitrator determine the scope of the arbitration agreement, they granted her the power to determine her own jurisdiction, thus allowing her to decide whether she had the authority to award attorneys' fees and costs. Moreover, the CPR Rules themselves provide a basis for awarding attorneys' fees and costs, which state: "[t]he Tribunal shall fix the costs of arbitration in its award . . . [and such] costs of arbitration includes . . . [t]he costs for legal representation and assistance and experts incurred by a party to such extent as the Tribunal may deem appropriate . . . ." CPR Rule 16.2; Heierli's Opp'n, Ex. 12. Finally, the Arbitrator unequivocally

stated in her Order regarding Contech's motion for reconsideration that her finding was based primarily on the fact that "[i]t is uncontroverted that Delaware law permits such an award where circumstances warrant [the award]." Heierli's Opp'n, Ex. 5 (July 15 Order). And the Arbitrator made a legal finding that the circumstances in this case warranted attorney's fees and such fees were clearly permissible under Delaware law.

The Court can find no reason to reject the Arbitrator's conclusion that she had jurisdiction to award attorneys' fees and costs. Thus, Contech position that the Arbitrator acted beyond the parameters of the agreement, the arbitration rules, and Delaware law in awarding attorney's fees, Petitioners' Reply Memorandum In Support of the Petition to Vacate a Portion of the Arbitration Award ("Contech's Pet. to Vacate Reply") at 7-10, must be rejected.

### b.     Whether the Arbitrator Exceeded Her Powers

A court may set aside an arbitration award "where the arbitrator[] exceeded [her] power[], or so imperfectly executed [it] that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). However, "[a]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of [her] authority, that a court is convinced [she] committed serious error does not suffice to overturn [her] decision." Kanuth, 949 F.2d at 1180 (quoting United Paperworkers Int'l Union, 484 U.S. at 38). And when examining an arbitration award "it is particularly necessary to accord the 'narrowest of readings' to the excess-of-authority provision of [9 U.S.C. § 10]." Kanuth, 949 F.2d at 1180.

Having found that the Arbitrator had the power to determine her jurisdiction, the essence of Contech's remaining arguments, despite its contentions to the contrary, Contech's Pet. to Vacate Reply at 7-8, can only be construed as a challenge based on the Arbitrator's misinterpretation of Delaware law and the CPR rules in awarding attorneys' fees and costs.

17

Contech's Pet. to Vacate ¶¶ 22-29. The Arbitrator found that Delaware law imposes strict

penalties, including the award of attorneys' fees and costs, in order to discourage breaches of

fiduciary duties. Id., Ex. D (Partial Award) at 34. She therefore imposed attorneys' fees and

costs against Contech in regards to the breach of its fiduciary duty. Id. Alternatively, the

Arbitrator found that the CPR rules "provide an independent basis to award both attorneys['] fees

and the costs of the proceeding." Id. Contech's argument that the Arbitrator lacked the power to

award attorneys' fees and costs under CPR Rule 16.2 because an arbitrator's authority to make

awards under that rule is limited by CPR Rule 10.3,[14] Contech's Pet. to Vacate ¶¶ 22-26, in

addition to its argument that the arbitrator misapplied Thorpe by Castleman v. CERBO, 676

A.2d 436 (Del. 1996), because "the Arbitrator did not award a common corporate benefit to

BEBOTech or its shareholders, and because there was no possible benefit flowing to BEBOTech

or its shareholders as a result of Heierli's action," Contech's Pet. to Vacate ¶¶ 27-29,

consequently amount to attacks on the Arbitrator's legal findings,[15] see Contech's Pet. to Vacate

---

[14] CPR Rule 10.3 states: "The Tribunal may grant any remedy or relief, including but not limited to specific performance of a contract, which is within the scope of the agreement of the parties and permissible under the law(s) or rules of law applicable to the dispute." Contech's Pet. To Vacate, Ex. D (CPR Rules).

[15] Heierli contends that Contech is "trying to argue that the Arbitrator's decision was in 'manifest disregard of the law . . . .'" Heierli's Opp'n at 17. After the Supreme Court's decision in Hall Street Associates, LLC v. Mattel, Inc., 552 U.S. 576 (2008), holding that the grounds enumerated in Sections 10(a) and 11 of the FAA are the exclusive means for vacating an arbitral award, it is questionable whether "manifest disregard of the law" remains as a basis for vacating an arbitration award. See Republic of Argentina v. BG Group PLC, 715 F. Supp. 2d 108, 115 n.7 (D.D.C. 2010) (Walton, J.). The text of this Court's footnote in Republic of Argentina reads:

> [The petitioner] relies on the non-statutory ground that an arbitral award may be vacated where the award was issued in "manifest disregard of the law." Lessin v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 481 F.3d 813, 816 (D.C. Cir. 2007). A question remains, however, as to whether this basis for vacating an arbitral award survived the Supreme Court's recent decision in Hall Street Associates, 552 U.S. 576 (2008). There, the Supreme Court concluded that Sections 10(a) and 11 of the FAA "provide the . . . exclusive grounds for expedited vacatur and modification," 552 U.S. at 584 (emphasis added), but acknowledged that its "vague phrasing" of the "manifest disregard of the law" standard in prior precedents has caused confusion amongst the various circuit courts of appeals, with some circuits viewing that standard as being

(continued . . .)

¶¶ 25-26 ("[The] CPR Rules . . . give the Arbitrator [the power] to award attorneys' fees and costs to Heierli only if that award is supported by Delaware law . . . [but] [t]he Arbitrator's award of attorneys' fees and costs to Heierli in this proceeding is prohibited by Delaware law.").

Irrespective of whether Contech is challenging the Partial Award under the "manifest disregard of the law" standard, the fact that the Arbitrator may have misapplied Delaware law or the CPR Rules is not a basis for vacating the award under the FAA. See LaPrade v. Kidder, Peabody & Co., 246 F.3d 702, 706 (D.C. Cir. 2001) (quoting Kanuth, 949 F.2d at 1178) (stating that to prevail under the "manifest disregard of the law" standard, the party seeking to vacate must demonstrate "more than error or misunderstanding with respect to the law"); Teamsters Local Union No. 61 v. United Parcel Serv., Inc., 272 F.3d 600, 604 (D.C. Cir. 2001) (quoting Kanuth, 949 F.2d at 1178) (stating "judicial review of arbitral awards is extremely limited," and that this Court "do[es] not sit to hear claims of factual or legal error by an arbitrator" in the same manner that an appeals court would review the decision of a lower court); LaPrade v. Kidder, Peabody & Co., 94 F. Supp. 2d 2, 4 (D.D.C. 2000), aff'd, 246 F.3d at 705 (stating that "a court must confirm an arbitration award where some colorable support for the award can be gleaned

---

(. . . continued)
        encompassed within the grounds explicitly listed under the FAA (specifically Sections 10(a)(3) and (4)), id. at 585, while others, including the District of Columbia Circuit, have viewed the standard as independent of the grounds explicitly enumerated under Section 10(a), see Lessin, 481 F.3d at 816 ("In addition to the grounds under the [FAA] . . . on which an arbitration award may be vacated, an award may be vacated only if it is 'in manifest disregard of the law.'"). The Supreme Court remained silent, however, as to which approach is correct, and neither the Supreme Court nor the District of Columbia Circuit have yet to weigh in on whether Hall Street Associates affects any of their respective precedents. See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., __ U.S. ___, ___, 130 S. Ct. 1758, 1768, n.3 (2010) (declining to decide whether the "manifest disregard of the law" standard survived Hall Street Associates); Regnery Pub., Inc. v. Miniter, 368 Fed. Appx. 148, 149 (D.C. Cir. 2010) (assuming, without deciding, that the "manifest disregard of the law" standard survived Hall Street Associates ).

715 F. Supp. 2d at 115 n.7.

from the record"). Consequently, because it has determined that the arbitrator had jurisdiction to award attorneys' fees and costs, the Court must affirm the award even if it believes that the arbitrator has committed error. See Kanuth, 949 F.2d at 1180 (quoting United Paperworkers Int'l Union, 484 U.S. at 38) ("[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of [her] authority, that a court is convinced [she] committed serious error does not suffice to overturn [her] decision."). Thus, the Court cannot find that the Arbitrator exceeded her power in awarding attorneys' fees and costs.

B.      The Final Award

In his Petition to Confirm the Final Award, Heierli asserts that this Court must confirm the arbitration award because "[t]he parties agreed to arbitrate their dispute and agreed that judgment could be entered on the arbitration award, the Final Award was made in the District of Columbia, the Petition was filed within one year of the Final Award being made, and there are no grounds upon which the Final Award could be vacated." Heierli's Mem. to Confirm at 6. Heierli also asserts that the court should award him pre-judgment interest on the Arbitrator's award from the date of the award to the date of the entry of judgment by this Court as is mandated by Delaware law, which constitutes the law the parties agreed would govern application of the Stockholders' Agreement. Id. at 7.

In response, Contech offers three bases upon which this Court should vacate the Final Award: (1) the Arbitrator "exceeded her jurisdiction" by deciding a new dispute that had not been processed through the dispute resolution procedure the parties agreed to before a dispute would be submitted to arbitration, Contech's Cross-Pet. to Vacate at 6-10; (2) the Arbitrator "exceeded her jurisdiction" by deciding the value of Heierli's shares as of May 2009 rather than assessing their value period between March 2006 and February 2007, id. at 11-12; and (3) the

Arbitrator acted in manifest disregard of the express terms of the Stockholders' Agreement by wrongfully rejecting Contech's use of Generally Accepted Accounting Principles ("GAAP") to determine the purchase price Heierli was entitled to receive for his BEBOTech shares, id. at 12-14.[16]

Heierli responds with a series of alternate grounds upon which the Court should reject Contech's two arguments that the Arbitrator "exceeded her jurisdiction." First, Heierli asserts that Contech's argument that Heierli failed to satisfy a condition precedent to the arbitration of the parties' dispute, i.e., participation in negotiations and mediation, is an argument challenging a decision of "procedural arbitrability," which is an issue subject to the Arbitrator's discretion that is not reviewable by this court. Plaintiff's Opposition to Defendant's Cross-Petition to Vacate Arbitration Award, and Reply to Defendant's Opposition to Petition to Confirm Arbitration Award ("Opp'n to Cross-Pet. & Reply") at 14-15. Failing the success of that position, Heierli argues that even if the challenge "raises question of 'substantive' rather than 'procedural' arbitrability," the question of arbitrability is one the parties agreed would be decided by the Arbitrator. Id. at 15. As support for this position, Heierli notes that the CPR Rules provide that "[t]he Tribunal [,i.e., the Arbitrator] shall have the power to hear and determine challenges to its jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement," id. at 16 (citing CPR Rule 8.1), and posits that the parties through their Stockholders' Agreement demonstrated their unmistakable intention "to have the Arbitrator

---

[16] Contech originally offered an additional basis for vacating the Final Award—that "the Arbitrator acted in manifest disregard of the law by ordering that Contech could not withhold federal taxes from the interest she ordered Contech to pay . . . Heierli . . ., even if federal tax law required Contech to do so." Defendant Contech Construction Products Inc.'s Notice of Withdrawal of One Ground for Its Cross-Petition to Vacate ("Contech's Withdrawal Notice") at 1-2; see also Contech's Cross-Pet. to Vacate at 14. Contech withdrew this argument as "moot" after Heierli provided proof that he had executed the required form "attesting that he is a resident of Switzerland" and therefore the withholding of United States federal income tax by Contech was not required by federal law. Contech's Withdrawal Notice at 1-2.

determine her own jurisdiction by providing that, '[a]ny controversy or claim arising out of or relating to this Agreement or the breach, termination or viability thereof' should be decided by the arbitrator 'in accordance with the CPR Rules for Non-Administered Arbitration,'" id. (citing Stockholders Agreement ¶ 7.11). Alternatively, Heierli opines that Contech abandoned its jurisdictional challenge by conceding during the October 2009 arbitration hearings that it was not raising completely new positions at that time but rather was requesting that the Arbitrator reconsider the same rulings she had rendered in her earlier Partial Award. Id. at 17. Heierli next argues that if the Court permits Contech to challenge the Arbitrator's jurisdiction, the challenge should nonetheless fail because (1) "[t]he determination of the purchase price for Heierli's [s]hares" did not concern a new dispute but involved application of the Arbitrator's Partial Award rulings; (2) "Heierli was not required to restart the dispute resolution process"; (3) "[n]egotiation and mediation were not conditions precedent to arbitration"; (4) "[e]ven if the parties' arbitration clause technically required Heierli to go through yet another round of negotiation and mediation—and it did not—[Heierli] was relieved of that obligation because Contech breached [that] very requirement"; (5) "Heierli did, in fact, comply with the negotiation and mediation provisions of the arbitration clause" and; (6) "[v]acating the Final Award would work an inequitable forfeiture." Id. at 18-23. Finally, Heierli responds to Contech's argument "that the Arbitrator 'manifestly disregarded the law' by supposedly failing to apply a provision in the Stockholders' Agreement regarding Generally Accepted Accounting Principles [GAAP]," id. at 26, by drawing the Court's attention to Contech's failure to identify any governing legal principle the Arbitrator knew about yet refused to apply, id. at 27. Heierli essentially characterizes the challenge by Contech as merely a disagreement with the Arbitrator's final

decision rather than one that identifies a governing principle of law, which was presented to, known, and ignored by the Arbitrator.  Id. at 27-28.

      1.      Standard of Review in Determining Whether the Final Award Should be Confirmed

The Court's authority to confirm the final arbitral award in this case is governed by section 9 of the FAA, which provides the following:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.

9 U.S.C. § 9.

The Supreme Court has held that the grounds enumerated in Sections 10(a) and 11 of the FAA are the exclusive means for vacating, modifying, or correcting an arbitral award. Hall Street Assocs., LLC v. Mattel, Inc., 552 U.S. 576 (2008).  Under 9 U.S.C. § 10(a), a court may vacate an arbitration award upon application of any party to the arbitration if the award was procured by "corruption, fraud, or undue means;" if there was "evident partiality or corruption in the arbitrator[];" if the "arbitrator[] [was] guilty of misconduct in refusing to postpone the hearing . . . or in refusing to hear evidence pertinent and material to the controversy;" or if the "arbitrator[] exceeded [her] powers."  Under 9 U.S.C. § 11, a court may modify or correct an arbitral award if (1) the movant can demonstrate that "there was an evident material miscalculation of figures[,] or an evident material mistake in the description of any person, thing, or property referred to in the award," (2) the arbitrator has rendered a decision "upon a matter not submitted to [her],

unless it is a matter not affecting the merits of the decision upon the matter submitted," or (3) "the award is imperfect in matter of form not affecting the merits of the controversy."  Id.

In applying these standards to determine whether vacatur or modification of the Final Award is warranted, the Court reiterates that it must remain mindful of the principle that "judicial review of arbitral awards is extremely limited," and that this Court "do[es] not sit to hear claims of factual or legal error by an arbitrator" in the same manner that an appeals court would review the decision of a lower court.  Teamsters Local Union No. 61, 272 F.3d at 604 (quoting Kanuth, 949 F.2d at 1178).  In fact, a broader review of an arbitrator's decision would frustrate the FAA's "emphatic federal policy in favor of arbitral dispute resolution," Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 631 (1985) (noting that the policy "applies with special force in the field of international commerce"), because such scrutiny would "undermin[e] the goals of arbitration, namely, settling disputes efficiently and avoiding lengthy and expensive litigation," LaPrade, 94 F. Supp. 2d at 4-5.  Instead, "a court must confirm an arbitration award where some colorable support for the award can be gleaned from the record." Id. at 4.  Thus, "[t]he showing required to avoid summary confirmation of an arbitration award is high, and a party moving to vacate the award has the burden of proof." Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp., 103 F.3d 9, 12 (2d Cir. 1997) (citations omitted).  Unless the Court has grounds to vacate, modify, or correct the Final Award, it must grant the petition to confirm the award.  See Adkins v. Teseo, 180 F. Supp. 2d 15, 18 (D.D.C. 2001) (quoting Taylor v. Nelson, 788 F.2d 220, 225 (4th Cir. 1986) ("A confirmation proceeding under 9 U.S.C. § 9 is intended to be summary: confirmation can only be denied if an award has been corrected, vacated or modified in accordance with the Federal Arbitration Act.").

<u>Challenge to the Arbitrator's Jurisdiction to Make the Final Award</u>

The Arbitrator "determined that [she] had jurisdiction to resolve [the issues presented in reaching the Final Award, finding that] they represented a continuation of the parties' existing dispute regarding the appropriateness of various expense categories Contech sought to deduct from the [earnings before interest, taxes, depreciation and amortization], matters which were previously addressed in the first hearing," Contech's Cross-Pet. to Vacate, Ex. J (Final Award) at 6, which was held in conjunction with the issuance of the Partial Award. The Court is precluded from holding that the "arbitrator[] exceeded [her] power" under 9 U.S.C. § 10 "[a]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of [her] authority . . . ." <u>Kanuth</u>, 949 F.2d at 1180 (quoting <u>United Paperworkers Int'l Union</u>, 484 U.S. at 38). Moreover, courts are required to "accord the 'narrowest of readings' to the excess-of-authority provision of [9 U.S.C. § 10]." <u>Id.</u> When "the parties agree to submit the arbitrability question itself to arbitration[,]" the court reviews an arbitrator's decisions regarding arbitrability under the same standard of review that applies to any other decision made by the arbitrator. <u>First Options</u>, 514 U.S. at 943. While the court owes deference to any decision of the arbitrator, deference to jurisdictional and procedural decisions is no greater than the deference that must be accorded to any other decision. <u>Id.</u> Here, the Court has found nothing in record to suggest that the Arbitrator's view—that the issues addressed in the Final Award were related to issues that were addressed in her partial award and thus her exercise of jurisdiction to address the same issues was proper—falls outside the confines of the parties' contract or resulted in the Arbitrator acting beyond the scope of her authority. <u>See</u> <u>Kanuth</u>, 949 F.2d at 1180. Accordingly, the Court can find no compelling reason to reach a different conclusion.

      b.      Contech's Challenge that the Arbitrator Acted in Manifest Disregard of the Law

Notwithstanding the Court's previous notation regarding the status of the "manifest disregard of the law" standard following Hall Street Associates, Contech has nevertheless failed to satisfy the standard.

> To prevail under the "manifest disregard of the law" standard, [the movant] must demonstrate "more than error or misunderstanding with respect to the law." Rather, it must show that "(1) the arbitrators knew of a governing legal principle[,] yet refused to apply it or ignored it altogether[,] and (2) the law ignored by the arbitrators was well[-]defined, explicit, and clearly applicable to the case."

Republic of Argentina, 715 F. Supp. 2d at 123 (quoting LaPrade, 246 F.3d at 706) (internal citations omitted). Contech argues here that the Arbitrator acted in manifest disregard of the law by rejecting its use of Generally Accepted Accounting Principles (GAAP) in calculating earnings before interest, taxes, depreciation and amortization, quoting the sentences in the Stockholders' Agreement that reads: earnings before interest, taxes, depreciation and amortization "of the Company shall be determined in accordance with United States accrual basis Generally Accepted Accounting Principles, consistently applied." Contech's Cross-Pet. to Vacate at 13.

The Arbitrator framed her decision regarding the propriety of various expenses Contech claimed were mandated by GAAP as follows:

> First, as I noted in the Partial Award, the contract, not GAAP, controls the calculation of the value of the [s]hares. The calculation is based on [earnings before interest, taxes, depreciation and amortization]. [Earnings before interest, taxes, depreciation and amortization are] not defined at all in GAAP. It is defined in the [Stockholders' Agreement]. The central focus of this inquiry is not, therefore, what GAAP requires but first and foremost, what the [Stockholders' Agreement] requires.

Contech's Cross-Pet. to Vacate, Ex. J (Final Award) at 6.  The Arbitrator therefore did not state that applying GAAP was proper and then rejected its application.  Instead, she considered the other language of the Stockholders' Agreement, including the sample calculation of earnings before interest, taxes, depreciation and amortization, to be controlling.  Id.

In addition, the Arbitrator based her refusal to apply GAAP to the purchase price on "extensive testimony and argument by both parties, including the testimony of competing experts." Opp'n to Cross-Pet. & Reply at 28.  Thus, the Court cannot conclude that she "stray[ed] from interpretation and application of the agreement and effectively dispense[d] [her] own brand of industrial justice."  Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., ___ U.S. ___, ___, 130 S.Ct. 1758, 1767 (2010) (internal quotation marks omitted) (citations omitted).  In fact, just the opposite is the case.

To show manifest disregard of the law, "there must be no colorable support for the [Arbitrator's] award in the record; if it seems that the [Arbitrator] rejected [the movant's] argument after fair consideration, then [the movant's] showing falls short, and the Court must enter the [Arbitrator's] judgment." LaPrade, 94 F. Supp. 2d at 6.  Here, the Arbitrator relied on extensive testimony, expert analysis, and the parties' arguments in arriving at her decisions regarding the application of GAAP to earnings before interest, taxes, depreciation and amortization.  See, e.g., Contech's Cross-Pet. to Vacate, Ex. K (transcript of the  proceedings before the Arbitrator where an expert was examined regarding principles of GAAP and earnings before interest, taxes, depreciation and amortization).[17] Thus, even if manifest disregard remains a viable basis for vacating an arbitration award, Contech has failed to meet this standard.[18]

_____

[17]  Heierli also attacks Contech's challenge to the Final Award, arguing that "Contech abandoned" its challenge to the jurisdictional authority of the Arbitrator "at the October 2009 hearing and, in fact" submitted issues to the

(continued . . .)

4.     The Award of Pre-Judgment Interest on the Judgment

"Interest is awarded in Delaware as a matter of right and not of judicial discretion."

Moskowitz v. Mayor of Wilmington, 391 A.2d 209, 210 (Del. 1978).  Furthermore, "[a]s a

general rule, interest accumulates from the date payment was due the plaintiff, because full

compensation requires an allowance for the detention of the compensation awarded and interest

is used as a basis for measuring that allowance." Id.  Here, the Stockholders' Agreement

provides that it is governed by Delaware law.  Heierli is therefore entitled to an award of pre-

judgment interest on the Final Award, at the rate determined by the arbitrator in the Final Award,

from the date that award was made up to and including the date of the issuance of the Order that

accompanies this Memorandum Opinion.

## III.  Conclusion

For the foregoing reasons, the Court grants Heierli's Cross-Petition to enforce the Partial

Award and his Petition to Confirm the Final Award, and denies Contech's Petition to Vacate the

Partial Award and its Cross-Petition to Vacate the Final Award.[19]


_____/s/_____
REGGIE B. WALTON
United States District Judge

---

(. . . continued)
Arbitrator, which resulted in "the now-challenged rulings." Id. at 17.  The Court need not address this argument, having decided the issue on other grounds.

[18]  As noted earlier, Contech's manifest disregard of the law challenge originally included a second theory—that the Arbitrator acted in manifest disregard of the law by deciding that Contech could not withhold federal taxes on interest payments made to Heierli in spite of federal tax law. However, Contech has withdrawn this challenge. See supra p. 19, note 11.

[19] This Memorandum Opinion accompanies the Order that was issued on September 30, 2010 and the Final Order issued contemporaneously with this Memorandum Opinion.